IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 45454

| STEPHEN BOSWELL and KARENA BOSWELL, husband and wife, | ) ) |  |
|---|---|---|
|  | ) | Boise, February 2018 Term |
| Plaintiffs-Appellants, | ) |  |
|  | ) | Filed: September 6, 2018 |
| v. | ) |  |
|  | ) | Karel A. Lehrman, Clerk |
| AMBER DAWN STEELE, and the Estate of MARY STEELE, | ) ) |  |
|  | ) |  |
| Defendants-Respondents. | ) |  |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County, Hon. William H. Woodland, District Judge.

The judgment of the district court is vacated and remanded for a new trial.

Merrill & Merrill, Chtd., Pocatello, for Appellants. Kent A. Higgins argued.

Cooper & Larsen, Pocatello, for Respondents. Reed W. Larsen argued.

_____

HORTON, Justice.

Stephen and Karena Boswell appeal from the judgment entered in favor of Amber Steele and the Estate of Mary Steele. The Boswells sought to recover damages for injuries suffered by Stephen after he was bitten by Amber's dog. Before the case was submitted to the jury, the district court ruled that all of the Boswells' claims sounded in negligence and so instructed the jury, rejecting the Boswells' proposed jury instructions on common law and statutory strict liability. The jury found that the Steeles were not negligent and the district court entered judgment consistent with that verdict. We vacate the judgment and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The human actors in the events giving rise to this lawsuit are related by blood or marriage. Stephen Boswell is married to Karena Boswell. Karena is Mary Steele's daughter. Amber is Mary Steele's granddaughter and owns a Scottish terrier named Zoey. Amber and Zoey lived in Mary's home.

1

On October 8, 2011, Stephen drove Mary home following a visit to the Boswell's home. Stephen went into the house with Mary. Zoey was confined in the kitchen behind a gate. Although Stephen had previously held and petted Zoey, on this day the dog barked and growled as Stephen neared. Stephen approached Zoey and lowered his closed hand. Zoey bit Stephen, removing some flesh from his hand.

This was not Zoey's first offense. Previously, Zoey had bitten other people, drawing blood on two occasions. The Steeles had a "Beware of Dog" sign on the gate to their property and Zoey was confined most of the time.

The Boswells filed their complaint on September 24, 2012, seeking damages under a number of different legal theories. After both parties filed motions for summary judgment, the district judge granted summary judgment in favor of the Steeles on October 30, 2013. The Boswells appealed and the Idaho Court of Appeals vacated the judgment and remanded, holding that the Boswells had presented sufficient evidence in support of their claims to survive summary judgment. *Boswell v. Steele*, 158 Idaho 554, 348 P.3d 497 (Ct. App. 2015) (*Boswell I*).

On remand, the case proceeded to jury trial. Before trial, the Boswells dismissed their negligence claims and attempted to proceed only on their claims of strict liability and premises liability. The district court, however, held that the remaining claims sounded in negligence. At the conclusion of the trial, the district court gave jury instructions that focused on negligence and refused to give jury instructions regarding the Boswell's strict liability theories. The district court gave the jury a special verdict form. The first two questions asked if Amber or Mary were negligent in their conduct and instructed the jury to simply sign the verdict form if it found that neither was negligent. Following deliberations, the jury returned a verdict finding that the Steeles were not negligent.

The Boswells timely appealed. The appeal was originally assigned to the Court of Appeals, which ruled in their favor in an unreported decision. This Court then granted the Steeles' petition for review.

## II. STANDARD OF REVIEW

"While this Court gives serious consideration to the views of the Idaho Court of Appeals when considering a case on review from that court, it reviews the district court's decision directly." *State v. Hill*, 161 Idaho 444, 447, 387 P.3d 112, 115 (2016) (quoting *State v. Watkins*, 148 Idaho 418, 420, 224 P.3d 485, 487 (2009)).

"The propriety of jury instructions is a question of law over which this Court exercises free review." *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011). "A requested jury instruction need not be given if it is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case." *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492 (2016) (quoting *Puckett v. Verska*, 144 Idaho 161, 167, 158 P.3d 937, 943 (2007)).

## III. ANALYSIS

The Boswells advance two main arguments on appeal. First, the Boswells assert that the district court erred when it found that all of their claims sounded in negligence, leading it to refuse to give jury instructions regarding common law and statutory strict liability. Second, the Boswells contend that the district court erred when it instructed the jury regarding comparative negligence.

## A. The Boswells were entitled to have the jury instructed on theories other than negligence.

The district court held that the Boswells' causes of action sounded in negligence and instructed the jury solely on negligence. One of the instructions given by the district court incorporated a modified version of language used by this Court in *McClain v. Lewiston Interstate Fair & Racing Association*, 17 Idaho 63, 104 P. 1015 (1909), and its progeny. The district court instructed the jury: "The owner of a dog is negligent if the owner knew or should have known of the dog's dangerous tendencies. Similarly, the custodian of a dog is also negligent for injuries caused if such custodian knew or should have known of the dog's dangerous tendencies." The district court also provided the jury with the following definition of negligence:

> When I use the word "negligence" in these instructions, I mean the failure to use ordinary care in the management of one's property or person. The words "ordinary care" mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence. Negligence may thus consist of the failure to do something which a reasonably careful person would do, or the doing of something a reasonably careful person would not do, under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide.

The district court then gave a special verdict form to the jury. The first question on the form asked "[w]as the Defendant, Mary Steele negligent, and if so, was her negligence a proximate cause of the Plaintiff Stephen Boswell's injuries?" The second question asked the same question

about Amber. The jury was then told "[i]f you answer both Questions 1 and 2 NO, you are done." Because the jurors answered both questions "no" they simply signed the verdict form. The Boswells argue that the district court erred when it held that all of their claims sounded in negligence and the common law cause of action in Idaho for dog bite cases imposes a strict liability standard. The Boswells also argue that the Pocatello Municipal Code (PMC) creates a separate strict liability cause of action for dog bite cases. These claims will be addressed in turn.

### 1. The jury instruction given by the district court did not accurately convey the elements of a common law dog bite case in Idaho.

The Boswells first argue that the common law cause of action for dog bite cases in Idaho is strict liability.[1] To support their argument, the Boswells cite to language found in *McClain*. The Steeles respond that Idaho has never expressly adopted strict liability as a cause of action for dog bite cases and has always applied principles of negligence in such cases.

Both parties focus their arguments on this Court's decision in *McClain*. There, a jockey was injured while he was riding a horse in a race in Lewiston. *McClain*, 17 Idaho at 70, 104 P. at 1017. McClain was injured after a dog ran onto the track and came in contact with his horse, causing the horse to throw him. *Id.* Although the case was decided based on a trespassing theory, this Court articulated the standard for liability for injuries caused by a domestic animal when it is not trespassing.

> If domestic animals, such as oxen and horses, injure anyone, in person or property, *if they are rightfully in the place where they do the mischief*, the owner of such animals is not liable for such injury, unless he knew that they were accustomed to do mischief. And in suits for such injuries, such knowledge must be alleged, and proved. For unless the owner knew that the beast was vicious, he is not liable. If the owner had such knowledge he is liable.

*Id.* at 79, 104 P. at 1020 (emphasis in original) (quoting *Decker v. Gammon*, 44 Me. 322, 329 (Me. 1857)).

This Court's statement in *McClain* has guided other decisions by this Court in cases involving injuries caused by dogs. In *Braese v. Stinker Stores, Inc.*, 157 Idaho 443, 337 P.3d 602 (2014), we upheld a judgment finding the owner of a store not liable for damages sustained by Braese when a dog jumped on him. Although our decision in *Braese* addressed the plaintiff's negligence claim, we reiterated that "an owner is liable for injuries caused by a domesticated

---

[1] We observe that the Legislature has acted to supplant the common law theories of liability that we discuss in this opinion when it adopted Idaho Code section 25-2810 in 2016. 2016 Idaho Sess. L. ch. 285, § 4, p. 786.

4

animal where the owner knew or should have known of the animal's vicious or dangerous propensity." *Id.* at 446, 337 P.3d at 605.

We recently reaffirmed this approach in *Bright v. Maznik*, 162 Idaho 311, 396 P.3d 1193 (2017), stating:

> In the context of liability for domestic animals, duty is governed by "a rule of law lacking the ordinary care scienter requirement of negligence when owners of domestic animals know of vicious tendencies. In cases where a domestic animal is not trespassing, the owner of the animal is liable for injuries caused if the owner knew or should have known of the animal's vicious or dangerous tendencies."

*Id.* at 315, 396 P.3d at 1197 (quoting *Boswell I*, 158 Idaho at 560, 348 P.3d at 503).

In *Boswell I*, the Court of Appeals noted that "[i]t is the elements of the cause of action that are significant, not a label of strict liability or negligence." 158 Idaho at 561, 348 P.3d at 504. We agree with this statement; however, the district court's instruction did not accurately state the elements of the Boswells' claim because negligence was not a required element of their claim. The district court's coupling of its modified negligence instruction incorporating the language from *McClain* with a definition of negligence employing the ordinary care standard effectively disregarded the holding in *Boswell I* that "the ordinary care scienter requirement of negligence" does not apply to a claim of liability for domestic animals. *Id.* at 560, 348 P.3d at 503. The result was that the jury was not informed that an owner or custodian with knowledge of a dog's vicious tendency is liable for injuries caused by the dog, regardless of whether the owner or custodian acted with ordinary care. Thus, the jury was not asked to decide two pertinent questions, i.e., whether Amber's dog had vicious tendencies and whether Amber or Mary were aware of such tendencies. Instead, the jury was asked to decide if Amber, Mary, or both were negligent. Reasonable care is simply not an element of an action predicated upon injury by a dangerous dog. We therefore conclude that the district court erred when it held that the Boswells' claims sounded in negligence and so instructed the jury.

### 2. The Boswells were entitled to an instruction on the cause of action arising under the Pocatello Municipal Code.

The Boswells next argue that the district court erred when it failed to properly instruct the jury as to the elements of liability under the PMC.

Pocatello Municipal Code section 6.04.010 defines a dangerous animal as:

> A. Any animal which, when unprovoked by teasing, taunting, or a threatening manner by any person, approaches said person in an apparent attitude of attack upon the streets, sidewalks, public grounds or places, common areas within

5

subdivisions or mobile home or recreational vehicle parks, common grounds of apartment buildings, condominiums, or townhouse developments, or private property not solely owned or possessed by the owner or custodian of the animal.

B. Any animal with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to otherwise endanger the safety of human beings or domestic animals or livestock; or

C. Any animal which bites, inflicts injury, assaults, or otherwise attacks a human being or domestic animal or livestock without justifiable provocation . . . .

PMC 6.04.010. The PMC also creates a cause of action for victims who are injured by dangerous animals.

E. Owner liability: An adult owner/custodian of a dangerous animal shall be liable for all injuries and property damage sustained by any person or by any animal caused by an unprovoked attack by any dangerous animal, plus all costs, civil judgments or penalties, criminal fines, final terms, veterinary fees, shelter impound fees, and any other penalties and orders.

PMC 6.04.050.

As noted above, the district court held that all of the Boswells' claims sounded in negligence. Although the district court gave an instruction regarding the ordinance, it incorrectly stated "violation of the ordinance is negligence." This instruction misstates the ordinance. The PMC provides that the owner is liable for an unprovoked attack by a dangerous animal. Although the Steeles correctly point out that provocation of the animal is a defense, it does not change the fact that an owner is liable if the attack was unprovoked. The instructions and special verdict form did not ask the jury to decide if Zoey was a dangerous animal or if Stephen provoked Zoey. We hold that the district court's jury instructions did not properly convey the elements of the Boswells' cause of action under the PMC because they incorporated a reasonable care standard not found in the ordinance.

**B. The Boswells' damages may be reduced proportionately based on legal responsibility with regard to their claim that of common law liability for injuries caused by a dangerous animal, but not for their claim under the Pocatello Municipal Code.**

Before trial, the Boswells moved for summary judgment, arguing that because their causes of action were predicated on theories of strict liability, a defense based on Stephen's comparative negligence was unavailable to the Steeles. The Boswells argue that the district court erred when it instructed the jury on comparative negligence.

**1. The jury may consider comparative responsibility when allocating damages for the Boswells' common law claim.**

The Boswells assert that the plain language of Idaho Code section 6-801 precludes it from being applied to strict liability actions. The Steeles argue that contributory negligence is a defense to liability in dog bite cases based on Idaho case law and the adoption of the defense in products liability actions. We agree with the Steeles that the jury should consider comparative responsibility when allocating damages in cases like this.

Idaho Code section 6-801 provides:

> Contributory negligence or comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property, if such negligence or comparative responsibility was not as great as the negligence, gross negligence or comparative responsibility of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence or comparative responsibility attributable to the person recovering. Nothing contained herein shall create any new legal theory, cause of action, or legal defense.

I.C. § 6-801. Although the statute specifically states that it is applicable in cases seeking "to recover damages for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property," this Court has held that this code section is also applicable to actions based on strict liability. *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 541, 726 P.2d 648, 653 (1985). In *Vannoy*, we quoted a statement from the decision in *Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.*, 411 F.Supp. 598, 603 n.5 (D. Idaho 1976), with approval:

> Once culpability, blameworthiness or some form of fault is determined by the trier of fact to have occurred, then the labels denoting the 'quality' of the act or omission, whether it be strict liability, negligence, negligence per se, etc., becomes unimportant. *Thus, the underlying issue in each case is to analyze and compare the causal conduct of each party, regardless of its label.*

111 Idaho at 542, 726 P.2d at 654 (emphasis in original). We believe that this reasoning applies with equal force to actions based upon injuries caused by dangerous animals. Therefore, although the district court erred by holding that the Boswell's claims sounded in negligence, it did not err by asking the jury to decide comparative responsibility for Stephen's injuries.

**2. Idaho Code section 6-801 does not apply to the action for dog bite cases created by the Pocatello Municipal Code.**

In addition to instructing the jury as to comparative negligence for the Boswells' common law claims, the district court also gave the jury similar instructions for their cause of action under the PMC. The Boswells argue that comparative negligence does not apply to the

cause of action under the PMC because the PMC provides an exclusive defense for dog bite cases.

Pocatello Municipal Code section 6.04.050(E) provides: "Owner Liability: An adult owner/custodian of a dangerous animal shall be liable for all injuries and property damage sustained by any person or by any animal caused by an unprovoked attack by any dangerous animal . . . ." The meaning of provocation can be discerned by other provisions of the PMC. Pocatello Municipal Code 6.04.010(A) defines "dangerous animal" as one which engages in aggressive behavior "when unprovoked by teasing, taunting, or a threatening manner by any person . . . ." The same ordinance provides an exception to the definition of "dangerous animal," stating that "[a]n animal will not be considered dangerous if any of the above actions occur when the animal is being teased, tormented, or abused . . . ." Apart from provocation, the Pocatello Municipal Code does not provide any defense to the owner of a dangerous animal for liability for injuries caused by the animal. Therefore, unlike the common law claim for liability, principles of comparative causal responsibility do not apply. If the jury finds that Stephen did not provoke Zoey, then the Steeles will be liable for all damages provided by Pocatello Municipal Code section 6.04.050(E). Conversely, if the jury finds that Stephen provoked Zoey, this will constitute an absolute bar to the Boswells' claim for damages under the ordinance.

## C. Attorney fees on appeal

Both parties request attorney fees on appeal. Because we vacate the judgment of the district court and remand the case, the Steeles are not the prevailing party and are not entitled to attorney fees. We deem the Boswells to be the prevailing party on appeal. However, the Boswells' opening brief cites only Rule 54(e)(1), I.R.C.P., in support of their request for attorney fees. Citation to a rule alone, without citation to a statute or other authority is insufficient and this Court will not consider the request for an award of fees. *Herrera v. Estay*, 146 Idaho 674, 683–84, 201 P.3d 647, 656–57 (2009). Therefore, we do not award fees to the Boswells. As prevailing parties in this appeal, they are entitled to costs as a matter of right.

## IV. CONCLUSION

We vacate the judgment of the district court and remand this case for a new trial. We award costs, but not fees, to the Boswells.

Chief Justice BURDICK, and Justices BRODY, BEVAN and Justice Pro Tem GREENWOOD **CONCUR.**